**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 17-2058

MOUNTAINEER MINERALS, LLC, a West Virginia limited liability company,

Plaintiff - Appellee,

v.

ANTERO RESOURCES CORPORATION, a Delaware Corporation formerly known as Antero Resources Appalachian Corporation,

Defendant - Appellant.

Appeal from the United States District Court for the Northern District of West Virginia, at Clarksburg. Frederick P. Stamp, Jr., Senior District Judge. (1:16-cv-00028-FPS-MJA)

Argued: October 31, 2018                                Decided: May 29, 2019

Before GREGORY, Chief Judge, and THACKER and QUATTLEBAUM, Circuit Judges.

Vacated and remanded by unpublished per curiam opinion.

**ARGUED:** W. Henry Lawrence, IV, STEPTOE & JOHNSON PLLC, Bridgeport, West Virginia, for Appellant. Kenneth Alexander Miller, II, MILLER LAW OFFICES, PLLC, Fairmont, West Virginia, for Appellee. **ON BRIEF:** Amy Marie Smith, Justin A. Rubenstein, Shaina Danielle Massie, STEPTOE & JOHNSON PLLC, Bridgeport, West Virginia, for Appellant. Kenneth Ray Miller, MILLER LAW OFFICES, PLLC, Fairmont, West Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

At the heart of this appeal is the issue of the rightful ownership of oil and gas leasehold rights (the "Marcellus Rights") stemming from a 100 year old lease (the "Collins Lease"). The Marcellus Rights reach depths that extend to just above the Marcellus formation.[1] Three oil and gas companies assert some interest in the Marcellus Rights: Antero Resources ("Appellant"), Mountaineer Minerals ("Appellee"), and Perkins Oil and Gas ("Perkins").[2] Perkins currently owns and operates oil and gas wells that extract oil and gas from beneath the Collins Lease property. Appellant and Appellee both seek ownership of the Marcellus Rights.

---

[1] The Marcellus formation is a rock formation, made mostly of shale, that extends from West Virginia, through western Virginia, eastern Ohio, western Pennsylvania, and western Maryland up to Marcellus, New York.

[2] Although Perkins claims it currently owns the Marcellus Rights, Perkins is not a party in this action. Perkins and Appellee entered into a contract under which Appellee would pay Perkins $1,250,000 in exchange for Perkins assigning its Collins Lease rights to Appellee. But that exchange did not happen concurrent to the signing of the contract. The contract gave Appellee four months to make the $1,250,000 payment. It also provided that that window of time would be extended if the lease was the subject of ongoing litigation at the end of the four-month period. In the event of ongoing litigation, the contract provided a contingency: If the court found Appellee to be the rightful owner of the Marcellus Rights, payment would be due within one month of the court order. If the court found Appellee was not the rightful owner of the Marcellus Rights, the contract would become null and void. In the meantime, Perkins gave Appellee access to its mineral rights associated with the Collins Lease in exchange for $1 and Appellee's agreement to "defend, protect, indemnify, and hold harmless Perkins . . . from any and all litigation, claims, demands, costs, payments, losses, damages, attorneys' fees, and actions of any nature whatsoever, including any challenges or disputes concerning the leasehold ownership assigned herein, and any claims resulting from or in connection with its future operations on the subject leasehold estate." J.A. 71–72.

3

In 2004, Perkins obtained mineral rights associated with the Collins Lease. In 2015, Perkins assigned those same rights to Appellee. But three years before Perkins assigned its rights under the Collins Lease to Appellee, Appellant purported to purchase the Marcellus Rights from Crude Oil and Gas company ("Crude"). The dispute before the district court focused on whether (1) Appellant had notice of Perkins' interest in the Marcellus Rights; (2) Appellant used reasonable diligence to determine if Perkins owned the rights; (3) Appellant was a bona fide purchaser of the rights; and (4) Appellant purchased the rights in good faith.

But the roots of this dispute pre-date Perkins' acquisition of rights. Almost 30 years before any of the parties to this action had any interest in the Marcellus Rights, the mineral rights arising from the Collins Lease were divided into shallow rights and deep rights. The record does not clearly indicate at which depths the shallow rights end and the deep rights begin. What the record does indicate is that (1) the deep rights begin where the shallow rights end; (2) the shallow rights extend through the fifth sand formation (a sedimentary layer beneath the Collins Lease property); (3) the deep rights begin after the fifth sand formation; (4) the fifth sand formation is thousands of feet above the Marcellus formation; and (5) the deep rights include the Marcellus Rights. Although the parties appear to agree that Perkins obtained ownership of the shallow mineral rights under the Collins Lease, they dispute whether Perkins also obtained the deep rights.

4

Because the district court did not resolve this dispute of material fact -- namely, whether Perkins owned the deep rights it claims to have conveyed to Appellee -- summary judgment was inappropriate. We vacate and remand.

## I.

## A.

## Division of the Shallow and Deep Rights

There is no dispute regarding the chain of title of the mineral rights associated with the Collins Lease up until the point at which the subsurface rights under the Collins Lease were divided into shallow rights and deep rights. After this division, the paths of the deep and shallow rights diverged for a period of seven years:

- In 1984, the owner of the subsurface rights at the time, P.D. Farr II, retained the shallow mineral rights and assigned the deep rights to Crude.

- In 1985, Crude assigned the deep rights to Monongahela Leasing ("Monongahela");

- In 1986, Monongahela assigned the deep rights back to Farr;

- In 1991, Farr assigned the shallow rights to Key Oil Company ("Key Oil"); and

- A month after the legal assignment from Farr to Key Oil, Key Oil assigned the shallow rights back to Farr. Accordingly, the deep and shallow rights came under the singular ownership of Farr again in 1991.

In 1996, Farr assigned to Ritchie Petroleum Corporation ("Ritchie) "all [Farr's] right, title, and interest in and to" two specific "oil and/or gas wells." J.A. 63.[3] Those two oil and gas wells bear API well numbers 47-85-03583 and 47-85-02520.[4] The assignment noted that, along with the rights to the wells came "any and all leasehold rights associated therewith." *Id.* But the assignment did not clarify which leasehold rights -- the deep rights or the shallow rights -- were associated with those wells. Notably, although the record indicates that at least one of those wells, API number 47-85-03583, extends to a depth of 6,000 feet, the record does not clearly indicate at what depth the shallow rights end and the deep rights begin. The record only indicates that the deep rights begin after the fifth sand formation and that the fifth sand formation is thousands of feet above the Marcellus formation.

On July 19, 2004, Ritchie assigned whatever rights it obtained from Farr in 1996 to Perkins. On October 29, 2015, Perkins assigned the same rights to Appellee.

B.

Imperfections in the Chain of Title

The record illustrates two imperfections in the chain of title of the Collins Lease rights. First, with a singular exception, each assignment of the Collins Lease rights was recorded in Ritchie County, West Virginia. The only assignment that was not originally

---

[3] Citations to the "J.A." refer to the Joint Appendix filed by the parties in this appeal.

[4] API well numbers are unique, permanent, numeric identifiers assigned to every oil and gas well in the United States by the American Petroleum Institute.

recorded in Ritchie County was Crude's 1985 assignment to Monongahela. That assignment was improperly recorded in Doddridge County, West Virginia. Second, two assignments do not reference the Collins Lease by name. The 1985 assignment from Crude to Monongahela and the 1986 assignment from Monongahela to Farr identify the relevant lease interest as a 578-acre tract (the acreage of the Collins Lease) leased on February 25, 1984, by the lessors "Charles M. Long, Charles F. Long, Walter C. Hunt, Melvin R. Usmiller, and P.D. Farr II" (the details of an assignment of the Collins Lease but not the Collins Lease itself). J.A. 45. In contrast, the other assignments refer to a 578-acre tract leased on June 11, 1919, "from William J. Collins and Sarah Collins." *See, e.g.*, J.A. 63.

C.

Appellant's Negotiations to Purchase the Marcellus Rights

Beginning around 2010, Appellant became interested in purchasing oil and gas rights in the Marcellus formation. Toward that end, Appellant began negotiating with Perkins. During its negotiations with Perkins, Appellant received an ownership report dated October 29, 2012, as part of its due diligence. That October 2012 ownership report listed Perkins as the owner of the Marcellus Rights. It also indicated that the Perkins wells on the Collins Lease property stopped just above the Marcellus formation. But a month later, again as part of its due diligence, Appellants obtained an ownership report dated November 28, 2012, that identified Crude -- and not Perkins -- as the owner of the Marcellus Rights. The November 2012 ownership report was based on an examination of only Ritchie County records. And because it examined only Ritchie County records, the

7

November 2012 ownership report did not include Crude's 1985 assignment of the deep rights to Monongahela, which had been recorded in Doddridge County. Although it did not list Crude's 1985 assignment to Monongahela, the November 2012 ownership report listed each of the subsequent assignments. Additionally, the November 2012 ownership report, like the October 2012 ownership report, indicated that the Perkins wells stopped just above the Marcellus formation. Nonetheless, the November 2012 ownership report concluded that Crude owned the Marcellus Rights.

After receiving the November 2012 ownership report, Appellant ceased negotiating with Perkins and turned its attention to Crude. Shortly after contacting Crude, Appellant purchased Crude's apparent interest in the Marcellus Rights for $1,000 per acre. [5]

D.

Proceedings Below

On January 15, 2016, Appellee initiated this action in the Circuit Court of Ritchie County, West Virginia. Appellee sought a declaratory judgment and quiet title of the

---

[5] The district court made several factual findings related to Appellant's purchase of the Marcellus Rights from Crude that we do not discredit. A few are worth noting here. First, Appellant paid a man named Clarence Sigley $250,000 to facilitate the transaction. Sigley made a few phone calls over the course of a couple days and put Appellant in touch with the president of Crude. Second, although Appellant negotiated with Perkins for years without ever reaching an agreement, Appellant received a single offer from Crude through Sigley and accepted. Indeed, the closing lasted only "about ten, fifteen minutes." J.A. 463. Third, Appellants paid Crude $1,000 per acre for the Marcellus Rights. In contrast, Perkins was offering to sell its interest in the Marcellus Rights to Appellant for $5,000 per acre. The Crude deal saved Appellant, in total, over $2,000,000.

Marcellus Rights. That is to say, Appellee asked the circuit court to find that, because Appellant is not a bona fide purchaser of the Marcellus Rights, Appellee is the rightful owner of those rights. On February 22, 2016, Appellant removed the case from Ritchie County to the district court on the basis of diversity jurisdiction. On February 27, 2017, the parties filed cross motions for summary judgment, each asserting that it had a superior ownership interest in the Marcellus Rights.

On August 10, 2017, the district court granted Appellee's motion for summary judgment and denied Appellant's competing motion. The district court concluded that, because Appellant had notice of Perkins' ownership interest in the Marcellus Rights but failed to use reasonable diligence to determine whether Perkins owned the rights, Appellant was not a bona fide purchaser and did not purchase its interest in the Collins Lease in good faith. On that basis, the district court held that Appellant's purchase of the Marcellus Rights from Crude did not render Perkins' ownership interest void. Accordingly, the district court granted Appellee's claim for declaratory relief and declared Appellee "the rightful owner of the Oil and Gas Marcellus Leasehold Rights arising from the Collins Lease." J.A. 764.

On September 11, 2017, Appellant filed its notice of appeal.

II.

Summary judgment is not appropriate unless the moving party demonstrates that "there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(c). Indeed, summary judgment should not be granted unless it is "perfectly clear" that "no genuine issue of material fact remains unresolved" and "inquiry into the facts is unnecessary to

9

clarify the application of the law." *Haavistola v. Cmty. Fire Co. of Rising Sun*, 6 F.3d 211, 214 (4th Cir. 1993). Further, any permissible inference drawn from the underlying facts must be drawn "in the light most favorable to the party opposing the motion." *Id.*

III.

Summary judgment was inappropriate here because a genuine issue of material fact remains unresolved -- namely, which rights Farr assigned to Ritchie in 1996. The record indicates that Farr assigned to Ritchie his interest in two wells. The record further indicates that at least one of those wells, API number 47-85-03583, extends below the fifth sand formation. Although the record indicates that the fifth sand formation is thousands of feet above the Marcellus formation, the record does not state the exact depth at which the fifth sand formation ends or the exact depth at which the deep rights begin. Accordingly, the record fails to demonstrate with sufficient certainty whether that well, API number 47-85-03583, reaches the Marcellus Rights. And if the well does not reach the Marcellus Rights, the record leaves no reason to conclude that Ritchie obtained the Marcellus Rights in 1996.

Determining whether Ritchie obtained the Marcellus Rights in 1996 is necessary "to clarify the application of the law." *Haavistola*, 6 F.3d at 214. That is because Ritchie assigned its rights, which either included both the deep rights and the shallow rights or just the shallow rights, to Perkins in 2004. Perkins assigned the same to Appellee in 2015. Thus, without knowing whether Perkins obtained the Marcellus Rights in 2004, the district court could not have concluded that Appellee is "the rightful owner of the Oil

10

and Gas Marcellus Leasehold Rights arising from the Collins Lease," even if it concluded that Appellant was not a bona fide purchaser. J.A. 764.

In light of the record's lack of clarity on this issue, we remand to the district court for the limited purpose of determining which rights Farr assigned to Ritchie in 1996 and any impact it may have on this case.

IV.

For these reasons, the judgment of the district court is vacated, and this case is remanded for proceedings consistent with this opinion.

*VACATED AND REMANDED*

11